CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

FEB - 5 2020

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK



# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### DANVILLE DIVISION

David B. Clayton Jr.,

                **Plaintiff,**

  v.

**Landmark Property Management Company,**

                **Defendant,**

CASE NO.: 4:20-cv-000013
**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff David B. Clayton Jr. ("Clayton Jr."), for its Complaint against Defendant Landmark Property Management Company ("Landmark") alleges as follows:

1. This is an action for personal injuries and economic damages suffered by the Plaintiff as a direct and proximate result of the Defendant's materially false statements and fraudulent representation adducing the Internal Revenue Service ("IRS") Low Income Housing Tax Credit ("LIHTC") and Department of Housing and Urban Development ("HUD") programs required all declared Self-Employment Affidavits to be notarized. The Defendant's enforcement of a Self-Employment Affidavit notary requirement caused Plaintiff unconscionable harm because the HUD or LIHTC program requirement the Defendant aver is fictitious; nor can the Defendant, a fiduciary of the LIHTC and HUD program, form a legally established claim to terminate Plaintiff's tenancy for "good cause" without willfully misrepresenting his ineligibility for housing was due to a failure to comply with the Defendant's knowingly false and fictitious LIHTC/HUD program notary requirement.

2. Relying upon Defendant's statement representing the notarization of Plaintiff's I-7 Self-Employment Affidavit would absolutely resolve all LIHTC noncompliance requirements alleged, Plaintiff willfully notarized the document to presumably remain eligible for LIHTC program assistance and prevent the termination of his tenancy. However, Plaintiff was soon thereafter evicted by Defendant for allegedly failing to comply with other fictitious LIHTC/HUD income requirements and/or lease violations not described in the Plaintiff's original termination

of tenancy notice. In doing so, Defendant egregiously violated the procedural rules, regulatory standards, and due process requirements set forth in Section 42 of the Internal Revenue Code ("Section 42") that establish the Defendant may not terminate the tenancy or refuse to renew the lease or rental agreement of Plaintiff except for good cause. In particular, Defendant used fictitious LIHTC and IRC §42 requirements to unjustifiably deprive Plaintiff of property and without accosting a written notice codifying all of the alleged violations or adequately provide Plaintiff reasonable time to refute Defendant's good cause for eviction; but in no case less than thirty (30) days from the date notice was delivered. Defendant unlawfully relied upon materially false facts that were insufficient at proving Defendant did not deprive Plaintiff of property and continued tenancy without constitutional due process of law.

3.    Defendant's actions contradicted investigative facts and determinations made by the Commonwealth of Virginia Fair Housing Board ("FHB") and HUD which established the Defendant was unable to provide any direct evidence that would actuate HUD/LIHTC program documents or regulations required Self-Employment Affidavits to be notarized. The Board determined the Plaintiff was in fact qualified to rent a premise consistent with the terms and conditions offered by the Defendant and other key HUD/LIHTC program requirements.

4.    Defendant knowingly and willfully made use of a false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or representation; or entry in violation of 18 U.S.C §1001. Defendant falsified and materially subverted IRC §42, LIHTC, and HUD program requirements in violation of 18 U.S.C §1001. Plaintiff seek punitive damages for fraud, negligence, breach of contract, and negligent infliction of emotional distress based on the Defendant demonstrating a reckless disregard for the truth, with a conscious purpose to avoid learning the truth, and affirming under oath to a Federal /State Agency and court of law, Plaintiff materially violated Section 42 of the Internal Revenue Code and other LIHTC/HUD program requirements.

## THE PARTIES

5.    Plaintiff is a Commonwealth of Virginia resident having a principle place to conduct affairs at 288 Liggon Rd., Madison Heights, VA 24572.

6.    Upon information and belief, Defendant Landmark Property Management Company is a corporation that conducts business in the Commonwealth of Virginia with a principle place of business at 406 East Fourth Street, Winston-Salem, NC 27101.

## JURISDICTION

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1132 and 1367. This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, Seventy-Five Thousand Dollars.  This Court further has original jurisdiction pursuant to 18 U.S.C. § 1030 and 28 U.S.C. § 1367.

8.    This Court has personal jurisdiction over Defendant Landmark Property Management Company because, inter alia, it has purposefully directed activities relating to the falsification of IRS Low Income Housing Tax Credit and Department of Housing and Urban Development program requirements, fraud, negligence, breach of contract with Plaintiff, and negligent infliction of emotional distress, all of which are the subject matter of this action in the Western District of Virginia-Danville Division.  For example, Landmark used its Martinsville Lofts, LLC business as an emissary to communicate false and fictitious LIHTC/HUD program requirements and statements to Plaintiff from its Landmark Property Management Company headquarters in Winston-Salem, NC.

9.    Defendant has established the requisite minimum contacts with this District, and exercise of jurisdiction would comport with traditional notions of substantial justice and fair play. Plaintiff has exhausted all other available remedies prior to the filing of this civil action.

## VENUE

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because Defendant is subject to personal jurisdiction in this judicial district and because a substantial part of the events and activities giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL BACKGROUND

11.    Founded in 2001, Defendant Landmark Property Management Company ("Landmark") provides property management solutions for more than 3700 apartments encompassing 86 communities within nine states. Landmark offers qualified tenants access and means to obtain affordable housing through its participation in the IRS Low Income Housing Tax Credit ("LIHTC") program.

12.    Landmark's success in the market of affordable housing is not philanthropic. In exchange for an equity contribution, Landmark indirectly receives federal subsidy incentives used to finance the construction and rehabilitation of affordable low-income rental housing.

13.    Landmark's equity contribution subsidizes low-income housing development, thus allowing some units to rent at below market rates. In return, Landmark receives tax credits paid in annual allotments, typically over 10 years. Landmark must meet eligibility requirements for at least 30 years and must keep the units rent restricted and available to low-income tenants.

14.    Absent the allocation of federal tax credits, for-profit investors akin Landmark would be unable to generate sufficient profit to warrant an investment in property development without the LIHTC program giving investors a dollar-for-dollar reduction in their federal tax liability.

15.    The Department of Housing and Urban Development and other state housing agencies are responsible for monitoring LIHTC eligibility requirements by requiring Landmark and tenants to certify on an annual basis that units are being rented to qualified low-income tenants. If Landmark is found to be out of compliance, they could risk forfeiting some of their tax credits.

16.    On or about October 2017, Plaintiff, who leased an apartment from Landmark at its Martinsville Lofts, LLC location in Martinsville, VA, was notified that the annual recertification questionnaire submitted by Plaintiff in September 2017 did not meet LIHTC eligibility requirements. Specifically, Landmark cited in a letter dated October 20, 2017 the Plaintiff was out of compliance for failing to have an I-7 Self-Employment Affidavit notarized and interfering with the company's ability to claim LIHTC tax credits allocated to the Plaintiff's rental unit.

17.    Additionally, Landmark Senior Regional Property Manager Andrew Hudson represented to Plaintiff in a recorded audio conversation on October 20, 2017; the notarization of Self-Employment Affidavits is compulsory, and a failure to comply with this specific LIHTC program eligibility requirement would result in the termination of Plaintiff's lease.

18.    Plaintiff informed Landmark the signature on the affidavit was sufficient and he would abstain from having the Self-Employment Affidavit notarized; and would continue to follow the status quo until Landmark provided direct evidence that proved HUD or LIHTC key program requirements succinctly stated Self-Employment Affidavits were required to be notarized.

19.    Plaintiff advised Landmark in the event the company was able to produce documentation that specifically state Self-Employment Affidavits are required by LIHTC/HUD to be notarized, instead of relying upon hearsay, Plaintiff would capitulate and immediately have the affidavit in question notarized.

## Plaintiff Discovers Statements Made by Landmark to be Fictitious

20.     Despite Landmark's assertion HUD and LIHTC required Self-Employment Affidavits
to be notarized, Plaintiff objectionably suspected the statements made were fictitious and used
several credible sources and documents to prove Landmark made statements that were
knowingly and intentionally false:

21.     The most prima facie piece of direct evidence was the I-7 Self-Employment Affidavit
itself, which clearly states "NOTARY OPTION" in the page footing.  The document also
contains a "WARNING": Section 1001 of the Title 18 U.S. Code makes it a criminal offense for
whoever willfully falsify a material fact or make a false statement in any matter within the
jurisdiction of a federal agency.

22.     HUD Appendix 3 "Acceptable Forms of Verification" in the HUD Occupancy
Handbook 4350.3 evidentiate acceptable factors used to verify an applicant and resident's
self-employment declaration are "notarized statements or affidavit signed" (not notarized) by
applicant showing amount earned and pay period."

23.     On information and belief, the Commonwealth of Virginia Fair Housing Board
("FHB") conducted an independent investigation into Landmark's fair housing practices and
determined Landmark did not provide any direct evidence to corroborate or substantiate their
representation the LIHTC and HUD eligibility guidelines required Self-Employment Affidavits
to be notarized.  Landmark did concede it had not requested the Plaintiff notarize any of his
Self-Employment Affidavits in the years prior.

24.     The FHB's investigative report revealed Landmark employees admitted to relying
solely upon the hearsay and assumption of other compliance co-workers when making
HUD/LIHTC notary determinations; and completely disregarded the acceptable forms of
verification procedures established in HUD Occupancy Handbook 4350.3 Chapter 5 §13D.

25.     With a conscious purpose to avoid learning the truth, Landmark employees rejected
Plaintiff's re-certification before an attempt was made to independently verify and corroborate
whether an applicable HUD/LIHTC policy exist to compel the Plaintiff to have his
Self-Employment Affidavit notarized. Landmark expressed their internal operating procedure
with specificity, "…whenever there is a notary option it needs to be notarized."

26.     When the FHB asked Landmark was there a change in requiring the self-employment
affidavit to be notarized, Landmark replied, "From all the information it looks to me that clearly

made a mistake…. My hope is that we have provided enough information to show that this is a routine request." Landmark averted producing direct evidence that established HUD/LIHTC or IRC §42 required Self-Employment Affidavits to be notarized.

27.    The fact remains Landmark knowingly and intentionally made a materially false statement to Plaintiff that HUD and the LIHTC program required Self-Employment Affidavits to be notarized. Despite Landmark's overtures, there is no comprehensive Internal Revenue Code, HUD or LIHTC program document in existence that require self-employment affidavits to be notarized. The official Department of Housing and Urban Development's minimum guideline only require Self-Employment Affidavits to be signed. Landmark made reference or use of a HUD and LIHTC policy or document that was known or should have been none to be false and fictitious.

### Plaintiff Discovers Fraud and Seeks to Stop It

28.    Plaintiff faced a dilemma. Dissuaded by a lack of direct evidence predicating the notarization of HUD Self-Employment Affidavits were mandatory LIHTC or HUD program requirements, Landmark elected to usurp Section 42 of the Internal Revenue Code and initiated legal action to terminate Plaintiff's lease and gain possession of his premise knowing the factual basis for initiating such a claim under oath to HUD, LIHTC, and a Virginia state court was perjurious, fictitious, fraudulent, and without good cause.

29.    Furthermore, Internal Revenue Code Section 42 applicable to the LIHTC program cite key requirements owners must use to terminate tenancy for non-compliance, and a failure to notarized a Self-Employment Affidavit isn't documented as one of them.

30.    Landmark violations of IRC §42 and LIHTC program requirements include, but are not limited to:

- When Landmark identified an error involving Plaintiff, it failed to first determine if the specific error constitutes a **program** violation;

- Failed to state a good cause reason for the action with enough clarity and purpose to enable the Plaintiff to prepare a defense;

- Plaintiff was only given a three (3) day written notice to cure the alleged program violation in lieu of the required IRC §42 thirty (30) day termination of tenancy notice to cure;

- Failed to provide adequate procedural due process safeguards and a legitimate reason for terminating a tenancy;

31.    Despite Plaintiff's efforts to curtail Landmark's malfeasance, in February of 2018, Landmark was granted a writ of possession for Plaintiff's residence.

32.    In January of 2019, Plaintiff filed a fair housing complaint with the Virginia Department of Professional and Occupational Regulation versus Landmark.

33.    On or about August 14, 2019, the Commonwealth of Virginia Fair Housing Board ("FHB") under the auspices of Housing and Urban Development ("HUD") notified Plaintiff (aka "Complainant") it had completed its independent investigation into claims of unlawful fair housing practices against the Defendant (aka "Respondent").

34.    The Fair Housing Board investigates, administers, and enforces national and state fair housing laws, and in this particular instance, the Board provided the parties with a final written determination that established the following evidence-based conclusions:  1.) Defendant subjected Plaintiff to adverse terms and conditions or other negative treatment 2.) Defendant misrepresented the existence of certain HUD program **requirements** used to determine Plaintiff's eligibility and compliance for subsidized housing 3.) Board's investigation determined Plaintiff was in fact qualified to rent consistent with the terms and conditions of the LIHTC program, IRC §42, HUD Occupancy Handbook, HUD Occupancy Handbook Appendix 3, and those offered by the Defendant 4.) Defendant consciously and deliberately refused to continue renting to Plaintiff and 5.) Plaintiff is a member of a protected class.

35.    The Virginia Fair Housing Board subsequently informed Plaintiff of his right to commence civil action in an appropriate United States District Court or state court no later than 180 days from the conclusion of the administrative process with respect to a complaint or charge (§36-96.18 Code of Virginia).

### Landmark Caused Plaintiff Damages as a Result of their Negligence, Fraud, Misrepresentation and Breach of Contract

36.    Based on Landmark's fraud, Plaintiff was evicted from his premise for violating a key HUD/LIHTC program requirement that does not exist.

37.    Based on Landmark's negligence, Plaintiff's tenancy was terminated despite determinations made by Federal and State housing agencies Plaintiff was compliant with all

qualification and eligibility requirements established in IRC §42, HUD, and LIHTC occupancy program.

38.    As a result of Landmark's fictitious and misrepresented statements made under oath and subject to the penalty of perjury, Plaintiff, due to no fault of his own, was homeless and unable to procure housing through conventional means.

39.    In addition, Landmark's fraud damaged Plaintiff's reputation. Since creditworthiness and timely rental payments are intricate to obtaining housing, all of Plaintiff's applications for rental housing were either rejected or the Plaintiff failed to meet disclosed qualification disclaimed by the property owner prior to the submission of a rental application.

40.    Most importantly, it is difficult to discern, without direct evidence, how the Plaintiff could be at fault for a LIHTC program violation determined by various federal and state agencies to be materially false and fictitious.

## FIRST CLAIM FOR RELIEF

### (False and Fraudulent Statements in Violation of 18 U.S.C §1001)

41.    Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

42.    Landmark made material representations and statements that were false and that were either known to be false when made or made with conscious knowledge to estop Plaintiff from learning the truth. Beginning in October 2017, Landmark made false representations to the Plaintiff, HUD, and the Virginia Housing Development Authority ("VHDA").  Specifically, Landmark cited a LIHTC/HUD Self-Employment Affidavit notary requirement approbate by HUD, FHB, and VHDA to be unequivocally fictive.

43.    In lieu of acknowledging at the time it had mistaken the need for the Plaintiff's Self-Employment Affidavit to be notarized or remediate the misrepresented program requirement, Landmark elected to fabricate a LIHTC/HUD requirement in order to fraudulently form a legal basis to terminate Plaintiff's tenancy; depriving Plaintiff of a formal due process right to administrative proceedings described in IRC §42 and thereby obtained through intimidation, an appropriation of Plaintiff's property under false pretense.

44.    Landmark has a careless and negligent history of falsely averring Plaintiff violated LIHTC recertification requirements and provisions of his lease. On or about October 26, 2016, Landmark threatened Plaintiff with eviction for allegedly failing to submit a requisite LIHTC

8

employment verification form. Plaintiff provided evidence to Landmark which proved all recertification documents were submitted within the thirty (30) compliance period and that Landmark was only awaiting a verification response from Plaintiff's employer. Plaintiff never received an apology for Landmark's false accusation, nor did Landmark initiate eviction proceedings alleging LIHTC noncompliance for the year 2016. In support of this claim for relief, Plaintiff relies upon documents and an audio account with Mecha Perrow (Landmark Regional Property Manager) on October 31, 2016 that is an accurate account intended to diminish plausible attestations, poor recollection, false narratives, and hearsay claims.

45. The aforementioned conduct of Landmark constitute perjury, intentional misrepresentations, deceit, and/or concealment of material facts known by Landmark to be with an intent to deprive Plaintiff of property and/or otherwise causing injury. Landmark subjected Plaintiff to unjust hardship with an intentional disregard for Plaintiff' rights, and so justifies an award for punitive damages. In light of the commission of fraud and deceit aimed at Plaintiff, such punitive damages are also necessary to deter Landmark from committing similar acts in the future.

WHEREFORE, Plaintiff demands judgment against Landmark for actual and punitive damages in an amount to be proven at trial, but exceeds more than $75,000; for costs herein incurred; and for such other and further relief as this Court deems just and proper for the proximate and actual result of Landmark's fraudulent conduct that falsely conditioned Plaintiff's eligibility for LIHTC/HUD subsidy and housing to the notarization of a Self-Employment Affidavit in violation of 18 U.S.C. §1001.

## SECOND CLAIM FOR RELIEF
### (Negligence)

46. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

47. Landmark failed to meet their duty to use reasonable care and accede to the HUD Occupancy Handbook Chapter 5 policies and procedure that state in detail, "An owner may accept a tenant's notarized statement or signed affidavit regarding the veracity of information submitted….Appendix 3 provides a list of acceptable forms of third-party verification."

48. Landmark acted negligently and carelessly when it instructed its employees to enact a standard practice of disregarding a disclaimed statement on the I-7 Self-Employment Affidavits

9

specifying a notary is optional. Landmark instructed its employees to inform Plaintiff
I-7 Self-Employment Affidavit must be resubmitted with a certified notary seal regardless of
whether the requirement was authorized under any IRC §42, LIHTC or HUD program.
Retrospectively, the LIHTC, HUD, and IRC §42 regulations do not require Self-Employment
Affidavits to be notarized.

49.    Landmark admitted it had clearly mistaken the LIHTC, HUD, and IRC §42 programs
required Plaintiff's I-7 Self-Employment Affidavit to be notarized. However, it should be duly
noted the Defendant proffered the admission only after Plaintiff filed a complaint with the FHB
and after inflicting permanent and negligent injuries.  In doing so, Landmark failed to meet all
four of the IRC §42 Form 8823 requisites needed to justify an eviction for good cause.

50.    Landmark failed to remediate represented statements of fact conveyed to Plaintiff
establishing it required Self-Employment Affidavits to be notarized, Plaintiff violated key
LIHTC/HUD program requirements, and breached terms and conditions of the lease that
constituted an immediate ground for the termination of Plaintiff's tenancy. Instead, Landmark
appealed to ignorance and continued to advance a narrative representing Self-Employment
Affidavits were required to be notarized without providing any direct evidence or documentation
of a LIHTC/HUD policy that supported such claim.

51.    Landmark has a careless and negligent history of falsely averring Plaintiff violated
LIHTC recertification requirement and provisions of his lease. On or about October 26, 2016,
Landmark threatened Plaintiff with eviction for allegedly failing to submit a requisite LIHTC
employment verification form.  Plaintiff provided evidence to Landmark which proved all
recertification documents were submitted within the thirty (30) compliance period and that
Landmark was only awaiting a verification response from Plaintiff's employer.  Plaintiff never
received an apology for Landmark's discrepancy, nor did Landmark initiate eviction proceedings
alleging LIHTC noncompliance for the year 2016. In support of this claim for relief, Plaintiff
relies upon documents and an audio account with Mecha Perrow (Landmark Regional Property
Manager) on October 31, 2016 that is an accurate account intended to diminish plausible
attestations, poor recollection, false narratives, and hearsay claims.

52.    Landmark owed Plaintiff certain legal duties to demonstrate if challenged whether
good cause existed to support a termination of tenancy and eviction in accordance with IRS
Form 8823 guidelines, IRC §42(h)(6)(E)(ii)(I), and Internal Revenue Ruling 2005-37.

Specifically, Landmark failed to demonstrate compliance with IRS Form 8823 Chapter 26 which permits an eviction or terminating Plaintiff's tenancy only after all four of the following succinct requirements are met:

    1) The extended user agreement includes the prohibition.

        a. For agreements entered into before January 1, 2006, the agreement must contain general language requiring building owners to comply with the requirements of IRC §42 (catch-all language) and the state agency must notify the owner in writing on or before December 31, 2005, that the catch-all language prohibits the owner from evicting or terminating the tenancy of an existing tenant of any low-income unit (other than for good cause) or increases the gross rent not otherwise permitted by IRC §42 throughout the entire commitment period.

        b. For extended use agreements executed after December 31, 2005, the agreement must clearly provide for the prohibition against the eviction or termination of tenancy other than for good cause and any increase in the gross rent not otherwise permitted under IRC §42

    2) Landmark, as part of its annual certification under Treas. Reg. §1.42-5(c)(1)(xi), certify annually that for the preceding 12-month period no tenants in low-income units were evicted or had their tenancies terminated other than for good cause and that no tenants had an increase in the gross rent with respect to a low-income unit not otherwise permitted under IRC §42

    3) The owner must not evict or terminate the tenancy of, an existing tenant of any low-income unit for other than for good cause, and

    4) The owner must not increase the gross rent unless permitted by IRC §42.

53.    Landmark negligently, carelessly, and fictitiously misrepresented statutory IRC §42 good cause eviction requirements; to include omitting eviction and termination of tenancy protection covenants to its lease. The lease and addendum agreement signed by Plaintiff did not contain the general language requirements specified in the IRS Form 8823 Chapter 26. However, when Landmark deprived Plaintiff good cause eviction protection as a matter of due process, those duties were breached, proximately causing Plaintiff's injuries.

54.    Landmark owed Plaintiff certain legal duties to determine income and calculate rent in accordance with HUD Occupancy Handbook 4350.3 Chapter 5.  On September 14, 2017,

Landmark submitted a determination of income eligibility document to the VHDA that falsified Plaintiff's Year of 2016 employment wages. The document exaggerated the Plaintiff's employment earnings Landmark calculated by more than 300 percent. Landmark's certified income miscalculation resulted in the Plaintiff exceeding the eligible income requirements for HUD housing assistance. Landmark's actions were egregious and negligent because it was known or should have been known prior to submitting Plaintiff's verified income under the penalty of perjury, the reported income was grossly erroneous. Landmark failed to exercise reasonable care to ensure the system computation it used to input, verify, and reconcile Plaintiff's income did not arbitrarily cause Plaintiff to be evicted and cumulatively disqualify him from renting a premise under the LIHTC/HUD programs.

55.     Landmark is liable for acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not limited to the following:

A. Failure to exercise reasonable care to avoid knowingly and intentionally representing a fictitious written statement predicating a material fact the IRC §42, LIHTC and HUD programs required Self-Employment Affidavits to be notarized and were material grounds for the termination of Plaintiff's tenancy; and alleged to be in accordance with LIHTC/HUD
program policies and procedures;

B. Failure to use reasonable care to ensure the evidence Landmark used to determine Plaintiff violated a LIHTC/HUD program requirement relied upon knowledge other than hearsay;

C. Failure to adequately warn Plaintiff and/or correct a knowing and intentional verbal misrepresentation predicated as a material fact the IRC §42, LIHTC and HUD programs required Self-Employment Affidavits to be notarized and were material grounds for the termination of Plaintiff's tenancy; and in accordance with LIHTC program policies and procedures;

D. Failure to adequately utilize IRC §42 or HUD Occupancy Handbook Chapter 5 and Appendix 3 prior to initiating judicial action to terminate Plaintiff's tenancy. An act prohibited by IRC §42 and HUD termination policies and procedures;

E. Failure to adequately cite and articulate the program violation Plaintiff allegedly violated with particularity. Without a probable or likely cause Plaintiff violated a codified LIHTC/HUD requirement, Plaintiff could not have committed a program violation;

F. Failure to provide adequate notices in accordance with IRC §42 termination of tenancy policies and procedures;

G. Failure to use reasonable care to avoid relying upon false grounds that determined Plaintiff was disqualified from the LIHTC program for exceeding HUD established income requirements;

H. Failure to exercise reasonable care to avoid providing perjured testimony to a federal government agency and Commonwealth of Virginia General District Court affirming Plaintiff violated HUD/LIHTC program requirements and lease provisions;

I. Failure to exercise reasonable care to avoid evicting Plaintiff for a key HUD/LIHTC program requirement that is not legally or comprehensively recognized in any chapter of the HUD Occupancy Handbook, LIHTC Compliance Manual, or Internal Revenue Code Section 42;

J. Failure to exercise reasonable care to avoid employing autocratic conditions and requirements that violate established LIHTC and IRC §42 due process guidelines, policies and procedures;

K. Failure to use reasonable care in preventing Plaintiff from enjoying the full benefits, protection, and rights of the fair housing laws;

L. Landmark, individually, and through their agents, representatives, distributors and/or employees, negligently misrepresented material facts about key LIHTC/HUD program requirements in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Landmark made such        misrepresentations without exercising reasonable care to ascertain the accuracy of the representation;

M. Failed to exercise reasonable care to avoid violating the IRC §42(h)(6)(B)(i) statute that require Landmark to amend and/or add language to the Plaintiff's leasing agreement which include prohibitions against the eviction or termination of tenancy other than for
good cause and without due process of under Fifth and Fourteenth Amendments;

N. Failed to submit a required IRS Form 8823 identifying the appropriate category of Plaintiff's noncompliance. Form 8823 requires Landmark to report Plaintiff's alleged noncompliance. Landmark failed to disclose Plaintiff's noncompliance to the IRS because the
notarization of a self-employment affidavit is not a noncompliance criteria categorized in the IRS Guide for Completing Form 8823. According to the Form 8823 guide, Plaintiff would have been out of compliance if he failed to **sign and/or date** required forms designed to document compliance with IRC §42. Plaintiff compliance with IRC §42 is evident by his signatory and date which are located on all required 2017 LIHTC Recertification documents.

O. Such further acts and/or admissions that may be proven at trial;

56.    The emotional and monetary damage Landmark inflicted upon the Plaintiff was preventable and would have likely been avoided if Landmark hadn't subverted the rules for terminating tenancy as prescribed in IRC §42(h)(6)(B)(i). Landmark, not the Plaintiff, jeopardized their tax credit compliance under IRC §42 when averring Plaintiff's failure to notarize a Self-Employment Affidavit significantly violated a codified LIHTC program requirement evidentiated to be false and fictitious.

WHEREFORE, Plaintiff demands judgment against Landmark for actual and punitive damages in an amount to be proven at trial, but exceeds more than $75,000; for costs herein

incurred; and for such other and further relief as this Court deems just and proper for the proximate and actual result of Landmark's negligent conduct and behavior that falsely conditioned Plaintiff's eligibility and qualification for LIHTC/HUD subsidy and housing to the notarization of a Self-Employment Affidavit.

### THIRD CLAIM FOR RELIEF
#### (Breach of Contract)

57.    Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

58.    Plaintiff fully performed all of its obligations under contract and did not breach provisions of the Landmark lease agreement or violate LIHTC/HUD program provisions.

59.    The VHDA and FHB determined Plaintiff did not violate LIHTC/HUD program requirements and Landmark had no legal right under current IRC §42 of the LIHTC or HUD program to terminate Plaintiff's tenancy for failing to notarize a Self-Employment Affidavit. In fact, the FHB established Plaintiff was qualified to rent consistent with the terms and conditions offered by Landmark and the LIHTC program. The FHB determined Landmark failed to perform all of its obligations under contract when refusing to continue renting to Plaintiff and under the misrepresented guise Plaintiff was materially non-compliant, unqualified, and ineligible for LIHTC housing assistance.

60.    The FHB established Landmark subjected Plaintiff to adverse terms and conditions or other negative treatment. Specifically, the Plaintiff was asked to provide a notarized Self-Employment Affidavit as part of his annual recertification process when he had not been previously asked to have the document notarized. HUD Occupancy Handbook Appendix 3 states Self-Employment Affidavits are only required to be signed, not notarized.

61.    To the extent Plaintiff challenged Landmark's condition for making the notarization of Self-Employment Affidavits compulsory under the LIHTC/HUD programs, it had done so only after Plaintiff discovered Landmark's fictitious representation, which breach was materially false and excused Plaintiff of further performance and obligation under the LIHTC/HUD programs and lease agreement.

62.    Landmark breached their contractual obligation with Plaintiff when requesting information that went beyond the scope and terms of an enforceable lease agreement; it now involved cognizant fraud with an intent to misrepresent, falsify and/or fabricate oral and written IRC §42 and LIHTC/HUD program requirements. The request made by Landmark was illegal

14

and didn't warrant action on the part of Plaintiff because Landmark had yet to establish the specific LIHTC/HUD program requirement Plaintiff allegedly violated.

63.    When Landmark requested Plaintiff notarize a Self-Employment Affidavit, it was known or should have been known the request was beyond the scope of Plaintiff's contractual obligation and not a relevant LIHTC/HUD program requirement. Therefore, Plaintiff has no obligation to act upon information that is known to be illegal or for a violation known to be unsubstantiated.

WHEREFORE, Plaintiff demands judgment against Landmark for actual and punitive damages in an amount to be proven at trial; for costs herein incurred; and for such other and further relief as this Court deems just and proper for the proximate and actual result of Landmark's breach of contract that falsely conditioned Plaintiff's eligibility and qualification for LIHTC/HUD subsidy and housing to the notarization of a Self-Employment Affidavit.

## FOURTH CLAIM FOR RELIEF

### (Negligent Infliction of Emotional Distress)

64.    Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

65.    Landmark negligently and carelessly made use of a false writing or document knowing the same to contain materially false, fictitious, or fraudulent statements or entry, when it knew or reasonably should have known of the falsity of such representations.

66.    Landmark negligently and carelessly demonstrated a reckless disregard for the truth, with a conscious purpose to avoid learning the truth, when it failed to verify the validity of IRC §42 and LIHTC/HUD program requirements Plaintiff allegedly violated.

67.    Landmark negligently and carelessly demonstrated a high level of incompetence for established IRC §42 and IRS Form 8823 due process eviction requirements; to include checks and balances that ensure, when reasonably utilized, Landmark did not knowingly and intentionally subject Plaintiff to adverse terms and conditions or other negative treatment.

68.    Landmark negligently and carelessly demonstrated a reckless disregard for the truth and rule of law, when it evicted Plaintiff without establishing the constituted LIHTC, HUD or IRC §42 program violation Plaintiff allegedly violated.

69.    Landmark demonstrated a reckless disregard for the truth and rule of law upon clear and convincing evidence that established the LIHTC program notary requirement it represented

to be well-founded in IRC §42 was indeed fictitious. Therefore, the balance of probability is no longer about whether Plaintiff violated and/or failed to materially comply with a legitimate LIHTC program notary requirement, but rather how Landmark used a materially false statement of fact as a mean to extort and/or intimidate Plaintiff into relinquishing his right to property knowing the Plaintiff consciously objected to the appropriation of his property being aggravatingly and unlawfully taken by force. Landmark used fear tactics intended to cause permanent emotional and economic injury when it communicated verbally and in writing that if Plaintiff did not comply with having his I-7 Self-Employment Affidavit notarized and/or relinquish the premise, an eviction would ensue. It was known or should had been known to Landmark the notarization of Self-Employment Affidavits are not an IRC §42, LIHTC, or HUD program requirement or a "good cause" justification for terminating Plaintiff's tenancy.

70.    Landmark negligently and carelessly demonstrated a reckless disregard for how false accusations caused Plaintiff emotional harm to the extent Plaintiff was distraught, due to no fault of his own, over not having a place to live.

71.    Landmark negligently and carelessly demonstrated a reckless disregard for the emotional damage Plaintiff endured after being accused of a LIHTC/HUD program violation or requirement the Plaintiff didn't commit. To include the emotional distress of being deprived of the right to participate in IRC §42 due process of law procedures which afford Plaintiff an opportunity to present evidence and form a defense against the claims alleged by Landmark prior to the initiation of judicial action to terminate tenancy.

72.    Landmark negligently and carelessly inflicted emotional harm by increasing the needless costs Plaintiff has paid to litigate this matter because Landmark failed to follow the orderly procedures prescribed in Section 42 of the Internal Revenue Code. There is no doubt in Plaintiff's mind this matter would have been resolved to the satisfaction of all the parties if Landmark hadn't subverted and abridged Section 42 of the Internal Revenue Code and IRS Form 8823 guidelines.

73.    Landmark negligently and carelessly demonstrated a reckless disregard for the damage it inflicted upon Plaintiff's reputation. Landmark is the proximate cause of Plaintiff being deemed a "high risk eviction tenant" and ineligible for housing. Plaintiff is preceded by his reputation at Landmark's property as being a model tenant who has never been in default of his

lease agreement for failing to pay rent or been cited for failing to comply with any term or condition of the LIHTC and HUD recertification programs or lease provisions.

74.    As a direct result of Landmark's misconduct alleged herein, Plaintiff has suffered and will continue to suffer emotional and mental distress and anxiety from the fear of being unlawfully deprived of his right to property and knowing without a lawful claim suit Landmark may not have been held liable for fraudulent, negligent, fictitious, and misrepresented LIHTC/HUD requirement that unequivocally caused Plaintiff to be evicted  from his premise without good cause.

WHEREFORE, Plaintiff demands judgment against Landmark for actual and punitive damages in an amount to be proven at trial, but exceeds more than $75,000; for costs herein incurred; and for such other and further relief as this Court deems just and proper for the proximate and actual result of Landmark's negligent infliction of emotional distress that falsely conditioned Plaintiff's eligibility and qualification for LIHTC/HUD subsidy and housing to the notarization of a Self-Employment Affidavit.

## JURY TRIAL DEMAND

Plaintiff hereby request a trial by jury.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and the complaint otherwise complies with the requirements of Rule 11.

Dated this 4th day of February 2020

David B. Clayton Jr.
Pro Se representation
288 Liggon Rd.
Madison Heights, VA 24572
(540) 947-1656